1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JOSE TRUJILLO,                              Case No.  1:22-cv-00983-BAM

12              Plaintiff,                       **ORDER DENYING PLAINTIFF'S**
                                                **MOTION FOR SUMMARY JUDGMENT**
13          v.                                   **AND SUMMARY ADJUDICATION**

14  BALDOMERO V. CISNEROS dba QUE               **ORDER DENYING DEFENDANT'S**
    PASA MEXICAN CAFE; HEISKELL                 **CROSS-MOTION FOR SUMMARY**
15  RANCHES, L.P.,                              **JUDGMENT AND/OR SUMMARY**
                                                **ADJUDICATION**
16              Defendants.
                                                **ORDER DECLINING SUPPLEMENTAL**
17                                               **JURISDICTION AND DISMISSING**
                                                **PLAINTIFF'S STATE LAW CLAIMS**
18                                               **WITHOUT PREJUDICE**

19                                               (Docs. 38, 40)

20

21

22

23          This matter is before the Court on Plaintiff Jose Trujillo's ("Plaintiff") Motion for

24  Summary Judgment and Summary Adjudication and Defendant Heiskell Ranches, L.P.'s

    ("Defendant") Cross-Motion for Summary Judgment and/or Summary Adjudication.  (Docs. 38-
25
    40.)  Plaintiff and Defendant each filed oppositions on March 14, 2024.  (Docs. 41-42.)
26
    Defendant filed its reply on March 24, 2024, and Plaintiff filed his reply on March 25, 2024.
27
    (Docs. 43-44.)  Having carefully considered the briefing filed by all parties, and for the reasons
28

                                              1

detailed below, Plaintiff's Motion for Summary Judgment and Summary Adjudication will be DENIED. Defendant's Motion for Summary Judgment and/or Summary Adjudication will be DENIED. The Court DISMISSES as moot the barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative complaint. The Court further DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claims.

## I.      BACKGROUND

Plaintiff filed this action on August 5, 2022. (Doc. 1.) On June 6, 2023, Plaintiff filed the operative first amended complaint against Defendants Heiskell Ranches, L.P. and Baldomero V. Cisneros dba Que Pasa Mexican Cafe, alleging denial of full and equal enjoyment and use, failure to remove architectural barriers in an existing facility, failure to design and construct an accessible facility, failure to make an altered facility accessible, failure to modify existing policies and procedures, and failure to maintain accessible features pursuant to the Americans with Disabilities Act of 1990 ("ADA"); violation of the California Unruh Civil Rights Act; and denial of full and equal access to public facilities pursuant to California Health and Safety Code § 19955 *et seq.* (Doc. 32.) On October 17, 2023, the parties filed a joint stipulation of dismissal as to Defendant Baldomero V. Cisneros dba Que Pasa Mexican Cafe. (Doc. 34.) Defendant Baldomero V. Cisneros dba Que Pasa Mexican Cafe was dismissed from the action on October 18, 2023, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), leaving Defendant Heiskell Ranches, L.P., as the sole Defendant. (Doc. 35.)

Defendant's alleged violations stem from Plaintiff's visit to the Que Pasa Mexican Cafe located at 1594 Hillman Street, Tulare, California on August 18, 2021. (Doc. 40-9, Joint Statement of Undisputed Facts ¶¶ 2, 9.) The Que Pasa Mexican Cafe is a restaurant that is open to the public. (*Id.* ¶ 2.) Defendant Heiskell Ranches, L.P. has owned the building and real property on which the Que Pasa Mexican Cafe is located since 2004. (*Id.* ¶ 4.) In his first amended complaint, Plaintiff asserts that he is "'physically disabled' as defined by appliable California and United States laws." (Doc. 32 ¶ 8.) He alleges that he personally encountered physical and intangible barriers "that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered" at the Que Pasa

Mexican Cafe, including encountering difficulties with: transferring from his car to his wheelchair due to the uneven surface and raised metal utility covers in the access aisle; opening the Que Pasa Mexican Cafe's entrance door; maneuvering his wheelchair over the raised threshold while holding the heavy entrance door; making his way into the Que Pasa Mexican Cafe due to the crowded interior of the entrance; finding any accessible tables at the Que Pasa Mexican Cafe; being seated at an outdoor patio table that was too low and lacked sufficient knee clearances to accommodate his wheelchair; maneuvering his wheelchair to and from his table due to the lack of sufficient clear width and excessive cross-sloping of the patio area; being unable to escort his young son to the restroom because the route of travel between the table and the restroom was too narrow and obstructed by seated diners; and being unable to pay for the meal at the cashier counter as the route of travel was too narrow for his wheelchair due to seated diners. (Doc. 32 ¶ 10.)  Plaintiff also alleges further barriers that relate to his disability.  (*Id.* ¶ 11.) Plaintiff asserts that he "was, and continues to be, deterred from visiting" the Que Pasa Mexican Cafe, because he knows that its "goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to [his] physical disabilities." (*Id.* ¶ 12.) However, Plaintiff asserts he will return "once the barriers are removed." (*Id.*)

## II.   EVIDENTIARY OBJECTIONS

As a preliminary matter, the parties object to evidence presented in support of the opposing parties' motions for summary judgment.  (Doc. 41-1 at 9-10, Doc. 42-1.)

### A.  Plaintiff's Objection to Expert Russell F. Taylor's Declaration and Exhibits

Plaintiff objects to the submission of materials from expert Russell F. Taylor as Defendant failed to timely supplement its disclosures.  (Doc. 41 at 7-8, Doc. 41-1 at 9-10.)  Mr. Taylor submitted a declaration and supporting exhibits including photos of alleged remediation and a letter noting that he determined that the Que Pasa Mexican Cafe's new parking area installation meets the applicable standards found in California Building Code Chapter 11B.  (Doc. 38-8, 39-7, 39-8.)

Federal Rule of Civil Procedure 26(e) provides generally that "A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or

request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."  Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "This sanction is intended to be 'self-executing' and 'automatic,' though its 'harshness' is mitigated by Rule 37's exceptions for substantially justified or harmless withholding."  *Hernandez v. Polanco Enterprises, Inc*., 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir.2001)).

The Court's Scheduling Order and subsequent order modifying the expert discovery deadline specified that expert disclosures were due September 16, 2023; supplemental expert disclosures were due October 2, 2023; the expert discovery deadline was November 2, 2023; and pretrial motions were due February 29, 2024.  (Docs. 26, 37.)  Defendant disclosed Mr. Taylor as an expert on September 15, 2023, in a report that noted the expert would evaluate the "remediation of the designated accessible parking spaces and adjacent elements that are scheduled to occur in October of 2023… [and] reserves the right to prepare a report outlining his opinions and conclusions regarding the remediated elements after the work occurs, which will be served on all Parties."  (Doc. 41-3 at 13.)  In his September 15, 2023 report, Mr. Taylor notes that his "opinions relate only to the exterior patio of the Restaurant and the planned remediation of the designated accessible parking stalls and the adjacent elements.  A supplemental report will be provided once the remediation occurs and after my inspection."  (*Id.* at 15.)  Mr. Taylor then undertook inspections on November 1, 2023 and December 7, 2023, wrote a letter regarding the inspections on December 18, 2023, and executed a declaration in support of Defendant's motion for summary judgment on February 28, 2024.  (Doc. 38-8, 39-7, 39-8.)

Plaintiff's counsel states that no supplemental report related to Mr. Taylor's expert opinion was served upon Plaintiff.  (Doc. 41-2 ¶ 5.)  Plaintiff's counsel also states that "Plaintiff

4

1    did not learn that renovations to the accessible parking at the subject restaurant had been

2    completed until February 28, 2024," when she was informed by Defendant's counsel.  (*Id.* ¶ 6.)

3    Plaintiff's counsel further contends that because the opinions contained in the September 15,

4    2023 report were limited to a grate on the exterior dining patio and no supplemental report was

5    produced, Plaintiff decided not to depose Mr. Taylor and did not seek to reinspect the Que Pasa

6    Mexican Cafe to evaluate the updated conditions.  (*Id.* ¶¶ 7-8.)  Defendant's counsel notes that

7    she was "admittedly (and apologetically) was late in providing [Plaintiff's counsel] the

8    confirmation of the exterior alterations at the Subject Property, and because [Plaintiff's counsel's]

9    expert had not had time to inspect the work before the filing of this Motion, the parties were not

10   able to agree on the mootness of those elements."  (Doc. 38-9 ¶ 7.)  Defendant's counsel also

11   states that she failed to provide Plaintiff's counsel with that information when it was received in

12   December 2023.  (*Id.*)

13          The Court finds that Mr. Taylor's report was not timely supplemented as contemplated by

14   Federal Rule of Civil Procedure 26(e), and the parties appear to agree that Mr. Taylor's report

15   was not supplemented in a timely manner.  (*See* Doc. 41 at 7-8; Doc. 38-9 ¶ 7.)  The information

16   appears to have been available in December 2023 – Mr. Taylor's inspections took place on

17   November 1, 2023 and December 7, 2023, and he wrote a letter regarding his final inspection on

18   December 18, 2023 – but Mr. Taylor's reports were not disclosed to Plaintiff for two months,

19   until the eve of the pretrial motion filing deadline.  (Doc. 38-8; Doc. 38-9 ¶ 7, 39-8.)  The Court

20   therefore finds that this expert information was not timely supplemented pursuant to Federal Rule

21   of Civil Procedure 26(e).

22          Defendant argues that this failure to timely disclose was harmless because Mr. Taylor's

23   original declaration stated that remediation was planned and that once remediation was

24   completed, he would provide testimony about the remediation.  (Doc. 43-1 at 9.)  The Court,

25   however, does not find that the failure to disclose was substantially justified or harmless pursuant

26   to Federal Rule of Civil Procedure 37(c).  Mr. Taylor's declaration does not provide a date for the

27   remediation and states that "A supplemental report will be provided once the remediation occurs

28   and after my inspection."  (Doc. 41-3 at 15.)  Informing the parties of potential future remediation

1   without a date estimate does not put the burden on Plaintiff to seek out a potential inspection

2   report and does not render Defendant's failure to disclose the supplemental information harmless.

3      Defendant further argues that the delay was harmless because the Que Pasa Mexican Cafe

4   is public and available for inspection at any time, and Plaintiff could have inspected the restaurant

5   between the date of Defendant's motion and the date Plaintiff's opposition was due.  (Doc. 43-1

6   at 9.)  This argument similarly attempts to shift the burden to Plaintiff for Defendant's failure to

7   disclose.  Rather than permit Plaintiff more than two months to inspect the restaurant between Mr.

8   Taylor's December 7, 2023 inspection and the February 29, 2024 pretrial motion deadline,

9   Defendant's February 28, 2024 disclosure shortened Plaintiff's timeframe to inspect to two weeks

10  prior to the deadline for Plaintiff's opposition.  Defendant therefore has not demonstrated that the

11  failure to supplement Mr. Taylor's report was harmless or substantially justified.  Accordingly,

12  the Court will not consider it on Defendant's motion for summary judgment and/or summary

13  adjudication.  *See Wilson v. Tony M. Sanchez & Co.*, No. CIV S07-0822-JAM-GGH, 2009 WL

14  173249, at *4 (E.D. Cal. Jan. 26, 2009) (holding that a declaration that was not timely disclosed

15  could not be considered by the court on a motion for judgment when the party did not

16  demonstrate that the failure to disclose was harmless or substantially justified) (citing *Yetti*, 259

17  F.3d at 1106-07.)

18      **B.  Defendant's Objections to Plaintiff's Evidence**

19      Defendant firsobjects to Plaintiff's evidence in support of his motion for summary

20  judgment on grounds including: medical diagnosis testimony and records are hearsay and are not

21  proper for Plaintiff to testify about as a lay witness; a website reference is not proper for Plaintiff

22  to testify about as a lay witness and is irrelevant and hearsay; outdated evidence is not relevant; a

23  document showing a receipt for a wheelchair is irrelevant as it does not support Plaintiff is

24  currently mobility impaired; Plaintiff's expert's opinion is irrelevant as it related to moot

25  allegations and is unlikely to lead to admissible evidence.  (Doc. 42-1 at 2-15.)  Second,

26  Defendant contends that Plaintiff's declaration is a sham declaration that cannot create a genuine

27  issue of fact.  (*Id.* at 4-9.)

28      As to Defendant's first set of objections, the Court declines to address these objections

individually but notes that when evaluating a motion for summary judgment, a court "cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of the Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  In addition, "improper legal conclusions... are not facts and likewise will not be considered on a motion for summary judgment." *Id.*  In the analysis below, the Court relies only upon any evidence that may be presented in an admissible form at trial in evaluating the merits of the motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(2); *see also Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]); *Burch*, 433 F. Supp. 2d at 1119-1120 (even if evidence is presented in a form that is currently inadmissible, it may be considered on a motion for summary judgment so long as the admissibility defects could be cured at trial).  Toward that end, the objections to any evidence cited below—particularly as to objections related to admissibility— are overruled.

As to Defendant's objection that Plaintiff's declarations are sham declarations, the Court also overrules this objection.  In support of Defendant's position, Defendant cites a Ninth Circuit holding that the "general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991).  However, in the same case, the Ninth Circuit concluded that this rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Id.* at 266-67.  Instead, it reflects concerns with " 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Id.* at 267.  "To disallow the declaration under the *Kennedy* rule, this Court must make a determination that the declaration is a 'sham,' in that it flatly contradicts earlier testimony in an attempt to create an issue of material fact and avoid summary judgment." *Calloway v. Contra Costa Cnty. Jail Corr. Officers*, No. C 01-2689 SBA, 2007 WL 134581, at *17 (N.D. Cal. Jan. 16, 2007), *aff'd*, 243 F. App'x 320 (9th Cir. 2007).

At issue here, Plaintiff testified in an earlier deposition that he could not walk unassisted. (Doc. 39-9 at 20-21.) (Q. Can you walk unassisted? A. No. Q. How long have you not been able to walk unassisted? A. I can't exactly recall, but I was given a wheelchair for that reason.)

Plaintiff contends in his declarations that he could not walk long distances and could walk in familiar places that presented less of a falling risk.  *See* (Doc. 40-6) ("As a result of my conditions and symptoms, it is difficult for me to walk and I cannot walk long distances. Depending on whether I have a lot of pain or ulcers, sometimes I have to use a wheelchair, and sometimes I am able to get by with a cane. Often, I use my wheelchair to reduce the risk of falling even when I am not in too much pain to physically walk…"); (Doc. 41-4) ("I am very familiar with my home and yard and so I am able to walk there.").  Despite the apparent broadness of Plaintiff's deposition testimony, it does not sufficiently contradict Plaintiff's declaration that he cannot walk long distances and depending on his condition, he sometimes uses a wheelchair or a cane. Accordingly, this objection is overruled.  *See Calloway*, 2007 WL 134581, at *18 (finding that the discrepancy between deposition testimony that an officer was "rough" with plaintiff and declaration that an officer hit plaintiff was not directly contradictory and therefore not sham testimony).

The Court now turns to the parties' cross motions for summary judgment and summary adjudication.

### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Id.*  (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor."  *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard.  *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Where, as here, the parties cross-move for summary judgment on a claim, the court is required to review the evidence submitted by the parties in support of their own motions and in opposition to the opposing party's motion in deciding each summary judgment motion.  *Fair Hous. Council of Riverside Cty., Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (finding district court was required to review the evidence properly submitted in support of plaintiffs' motion for summary judgment to determine whether it presented a disputed issue of material fact precluding summary judgment on defendants' motion for summary judgment);

1   *Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) (stating court considers each party's

2   evidence on cross motions to evaluate whether summary judgment was appropriate).

3        In resolving a summary judgment motion, "the court does not make credibility

4   determinations or weigh conflicting evidence." *Soremekun,* 509 F.3d at 984.  Instead, "[t]he

5   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

6   in [its] favor." *Anderson,* 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the

7   nonmoving party must produce a factual predicate from which the inference may reasonably be

8   drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985),

9   aff'd, 810 F.2d 898 (9th Cir. 1987).

10       A party demonstrates summary adjudication is appropriate by "informing the district court

11   of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with affidavits, if any,' which it believes

13   demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting

14   Fed. R. Civ. P. 56(c)).

15   **IV.    CROSS-MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION**

16       Plaintiff's operative first amended complaint alleges claims arising under federal and state

17   disability access laws, including: (1) Title III of the Americans with Disabilities Act of 1990; (2)

18   California's Unruh Act, Cal. Civ. Code § 51; and (3) California's Health & Safety Code. (Doc.

19   32.)  Plaintiff now moves for summary judgment on his Title III ADA claim and his Unruh Act

20   claim on the basis that there are no genuine disputes of fact and Plaintiff is entitled to relief under

21   the ADA and Unruh Act.  (Doc. 40-1.)  Defendant moves for summary judgment on Plaintiff's

22   claims on the basis that Plaintiff does not qualify as disabled for the purposes of the ADA and the

23   Court lacks jurisdiction once the federal ADA claim is mooted.  (Doc. 38-2.)

24   **A.    ADA Disability Claim**

25       The ADA prohibits discrimination on the basis of disability.  42 U.S.C. § 12182(a); *Lopez*

26   *v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020) (observing that the ADA

27   was enacted "to address discrimination against individuals with disabilities").  "To prevail on a

28   Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning

of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

To sustain a claim under the ADA, a plaintiff is required to "first demonstrate a qualifying disability." *Davis v. Ma*, 848 F. Supp. 2d 1105, 1113 (C.D. Cal. 2012) (citing 42 U.S.C. § 12102(2)(A)); *see also Lopez*, 974 F.3d at 1033 (observing that to prevail on a Title III discrimination claim, and plaintiff "must establish that... he is disabled within the meaning of the ADA").  The ADA defines a disability as including:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(1)(A)-(C).  Thus, a plaintiff proceeding under Section 12102(1)(A)—also known as "the actual disability prong" must identify a substantially limited major life activity. *See Nunies v. HIE Holding, Inc*., 908 F.3d 428, 436 (9th Cir. 2018).  Pursuant to the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

### 1.   Plaintiff's Motion for Summary Judgment or Summary Adjudication on ADA Claim

Plaintiff asserts in his complaint that he is " 'physically disabled' as defined by appliable California and United States laws." (Doc. 32 ¶ 8 [FAC].)  In his first amended complaint, he alleges that he "is substantially limited in his ability to walk, and uses a wheelchair or cane for mobility. In addition, Plaintiff's hearing is substantially limited."  (*Id.*)  In seeking summary judgment, Plaintiff submits a declaration and supporting exhibits in which he states that among "other ailments, [he suffers] from deficiency of Protein C and S, and ha[s] been diagnosed with May-Thurner syndrome."  (Doc. 40-6 ¶ 2.)  Plaintiff further states that he "had recurrent deep

vein thrombosis (blood clots) and post-thrombotic venous insufficiency, which in turn causes open wounds on [his] legs called venous stasis ulcers." (*Id.*)  He stated that his symptoms include "pain, loss of feeling, leg weakness, and muscle degeneration," which makes it difficult for him to walk and prevents him from walking long distances. (*Id.* ¶¶ 2-4.)  Defendant opposes Plaintiff's motion for summary judgment on Plaintiff's ADA claim, arguing that: Plaintiff is not substantially limited in his ability to ambulate, Plaintiff cannot establish that his mobility was affected by the elements mentioned at the facility, and Plaintiff's self-serving declarations do not support his motion for summary judgment. (Doc. 42.)

Courts have observed that a plaintiff seeking summary judgment on an ADA claim has the burden "to present a case of sufficiently-overwhelming strength demonstrating, among other things, that he is disabled within the meaning of the ADA." *Hull v. G & M Gapco, LLC,* No. CV 21-4102-GW-JEMX, 2022 WL 2101712, at *1 (C.D. Cal. Feb. 8, 2022) (citing *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).  When an ADA plaintiff moves for summary judgment, some courts have held that "a self-serving declaration identifying impairments and symptoms is insufficient to establish disability under the ADA, particularly when the reported impairments 'are not easily understandable by a lay person.'" *Trujillo v. H&S LBSE Inc*., No. 1:21-cv-0058-JLT-BAM, 2024 WL 1344590, at *4 (E.D. Cal. Mar. 29, 2024) (quoting *Core v. Casino Center LLC*, No. CV 20-462 DSF (AGRX), 2020 WL 10503190, at *3 (C.D. Cal. Dec. 22, 2020)); *see also Moralez v. Wal-Mart Stores, Inc*., No. C 17-05127 WHA, 2018 WL 5458767, at *2 (N.D. Cal. Oct. 28, 2018).  In a case where the court ruled on defendant's motion for summary judgment on an ADA claim, the court found that though "plaintiff provides documentation of his LBP, allergies, and eye condition, he has not submitted evidence that supports a conclusion he is disabled under the ADA" and further noted that nothing "in plaintiff's documentation would suggest that plaintiff was substantially limited in a major life activity." *Leonard v. Denny*, No. 2:12-cv-00915-TLN-ACP, 2020 WL 5039065, at *16 (E.D. Cal. Aug. 26, 2020), report and recommendation adopted, No. 2:12-CV-00915-TLN-AC, 2020 WL 5891389 (E.D. Cal. Oct. 5, 2020).

Here, in support of Plaintiff's allegations of physical disability and substantial limitation

as to walking and hearing, Plaintiff submits a declaration and excerpts from medical records. (Doc. 40-6 ¶¶ 2-12; Doc. 40-7 at 2-7, 9-14.)  These records include an email with the subject "Health Record from FollowMyHeath®" dated November 3, 2021, which lists Plaintiff's diagnoses, allergies, and medications.  (Doc. 40-7 at 2-4.)  Plaintiff further submits a treatment note from South Valley Vascular Bass Medical Group dated June 22, 2020, which describes Plaintiff's "History of Present Illness" including chronic venous insufficiency and right shoulder pain and a history of high cholesterol and protein C deficiency.  (Doc. 40-7 at 5-6.)  Plaintiff also submits a Surgery and Procedure Report dated June 26, 2020 noting the aborted performance of a bilateral lower venogram, "longstanding history of DVTs secondary to protein S deficiency, and Plaintiff presenting "with evidence of ongoing swelling of bilateral legs." (*Id.* at 7.)  Plaintiff also submits a Disabled Person Parking Placard issued on April 9, 2021 with an expiration of June 30, 2023.  (*Id.* at 9-11.)  Plaintiff further submits a letter from the Department of Veterans Affairs dated October 11, 2023, stating he is "considered to be totally and permanently disabled due solely to [his] service-connected disabilities" as of December 29, 2008.  (*Id.* at 13-14.)  Plaintiff also submits photos showing ulcers on his left leg from April and May 2021.  (*Id.* at 24-27.)  Plaintiff additionally submits a sales receipt for what is apparently a wheelchair, which notes it was ordered by Angela Pap, who Plaintiff states is his treating physician.  (*Id.* at 29; Doc. 40-6 ¶ 12.)

The Court cannot conclude that there is no material dispute of fact regarding whether Plaintiff had a disability pursuant to the ADA.  For instance, the email containing Plaintiff's diagnoses, allergies, and medications is dated November 3, 2021, approximately three months after Plaintiff's visit to the Que Pasa Mexican Cafe and does not clarify whether Plaintiff suffered from symptoms limiting his walking during the August 18, 2021 visit.  (Doc. 40-7 at 2-4.)  It is similarly unclear whether the South Valley Vascular Bass Medical Group treatment notes dated June 22, 2020 supports Plaintiff's contention that he is substantially limited in the major life activity of walking.  This report was made over a year before the August 2021 visit, advises Plaintiff to "walk daily for at least 30 minutes or exercise," shows normal motor strength in the upper and lower extremities, and states that Plaintiff generally appeared to be in no acute distress

1  despite noting pain to abduction and external rotation.  (*Id.* at 5-6.)  Despite references to

2  Postthrombotic syndrome with inflammation of left lower extremity, the Court cannot conclude

3  without further evidence that this impairment prevented Plaintiff from the relevant life activity of

4  walking during the relevant period.  *See Trujillo*, 2024 WL 1344590, at *5 (E.D. Cal. Mar. 29,

5  2024) (court was unable to conclude the plaintiff was disabled under the ADA definition where

6  "there is no explanation from a physician as to what affect 'deep vein thrombosis (blood clots)

7  and post-thrombotic venous insufficiency' may have on the body, and such information is beyond

8  the scope of knowledge for a layperson.").  Additionally, the June 26, 2020 Procedure Report

9  showing venous hypertension, the United States Department of Veterans Affairs letter, California

10  Department of Motor Vehicles Disabled Person Parking Placard, ulcer photos, and wheelchair

11  receipt, while suggesting that Plaintiff may have some disability, do not show that Plaintiff's

12  walking was substantially limited at the time of the visit.  (Doc. 40-7 at 7, 9-14, 24-27, 29.)  In

13  sum, Plaintiff has not shown there is no material dispute regarding whether he was substantially

14  limited in his ability to walk at the relevant time.

15      On this record, Plaintiff does not carry the burden to show he was disabled at the relevant

16  times in this action.  As Plaintiff failed to present a sufficiently overwhelming case that he is

17  disabled within the meaning of the ADA, he is not entitled to summary judgment or summary

18  adjudication of his claim for disability discrimination in violation of the ADA.  *See Hull*, 2022

19  WL 2101712, at *1.

20      Accordingly, Plaintiff's motion for summary judgment or adjudication on his ADA claim

21  is denied.

22      **2.  Defendant's Request for Dismissal**

23      In its opposition to Plaintiff's motion for summary judgment, Defendant raises the issue of

24  whether Plaintiff had standing to bring his claim under the ADA.  (Doc. 42 at 6-12.)  Specifically,

25  Defendant contends that because Plaintiff cannot establish that he had a disability as defined by

26  the ADA at the relevant time, and his ADA claim fails as a matter of law.  (*Id.* at 6.)  While

27  Plaintiff has not shown evidence of a disability sufficient for summary judgment in his favor, the

28  defects relating to the disability element of Plaintiff's ADA claim may be cured.  The Court

therefore declines to dismiss Plaintiff's ADA claim.  *See Trujillo*, 2024 WL 1344590, at *5 n. 4

(denying plaintiff's motion for summary judgment but noting that because "the evidentiary

defects related to standing may be cured, the Court declines to dismiss the ADA claim.").

### 3. Defendant's Motion for Summary Judgment and/or Summary Adjudication on ADA Claim

Defendant contends that it is entitled to summary judgment or summary adjudication on

Plaintiff's ADA claim because (a) Plaintiff does not have a disability as defined by the ADA; and

(b) the ADA claim is moot as the barriers alleged by Plaintiff are either irrelevant or have been

remediated.  (Doc. 38-2.)

a.  Actual Disability Prong of ADA Claim

Defendant first argues that Plaintiff cannot show he has a disability as defined by the

ADA and therefore Plaintiff's ADA claim fails.  (Doc. 38-2 at 9-11.)

When an ADA plaintiff contests a defendant's motion for summary judgment,

"comparative or medical evidence" is not required "to establish a genuine issue of material fact

regarding the impairment of a major life activity."  *Head v. Glacier Nw. Inc*., 413 F.3d 1053,

1062 (9th Cir. 2005), overruled on other grounds by *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th

Cir. 2019).  In *Head v. Glacier*, the Ninth Circuit examined a case in which the plaintiff "did not

submit medical or comparative evidence in support of his claims, but did submit numerous

affidavits and other evidence."  *Id.* at 1057.  The Ninth Circuit held there that, "Under the facts of

this case, [plaintiff] has made the minimal showing necessary to survive summary judgment on

his claims for substantial impairment of the major life activities…"  *Id.* at 1062.

Disability under the ADA does not require total or permanent incapacitation, as "[t]he Act

addresses substantial limitations on major life activities, not utter inabilities."  *Bragdon v. Abbott*,

524 U.S. 624, 641 (1998) ("When significant limitations result from the impairment, the

definition is met even if the difficulties are not insurmountable.''); *Humphrey v. Memorial

Hospitals Assoc*., 239 F.3d 1128, 1135 (9th Cir. 2001) (reversing grant of defendant's summary

judgment motion and, relying on *Bragdon*, noting that ''an individual who has a[n] impairment

that causes him to take inordinately more time than others to complete a major life activity is

1    substantially limited as to that activity under the ADA.'').

2           In support of its argument that Plaintiff does not satisfy the actual disability prong

3    required in ADA claims, Defendant primarily submits three declarations with supporting video

4    and photo exhibits from private investigators that contrast with Plaintiff's deposition testimony

5    that he could never walk unassisted.  (Docs. 38-4, 38-6, 38-7, 39, 39-1, 39-2, 39-3, 39-4.)

6    Investigator Rene Garza states in his declaration that on May 22, 2022, he observed Plaintiff

7    leave his residence and take numerous steps outside of his home, bend down into a half squat to

8    retrieve a piece of paper from the ground, and walk and bend in a fluid motion without observable

9    physical restrictions or artificial supports.  (Doc. 38-4 ¶ 4; Doc. 39; Doc. 39-1.)  On May 23,

10   2022, Mr. Garza further observed and submits video of Plaintiff working in his yard for

11   approximately two hours, moving trash containers around the property; standing, walking,

12   bending, and lifting objects; raking and shoveling items from the yard; traversing uneven terrain

13   in the yard while working; and walking, bending down, and lifting objects without the aid of

14   mobility devices.  (Doc. 38-4 ¶ 5; Doc. 39; Doc. 39-1.)  Mr. Garza further stated that he did not

15   observe Plaintiff utilize a cane, wheelchair, or other mobility aid during the two days of

16   surveilling Plaintiff.  (Doc. 38-4 ¶ 6; Doc. 39.)

17          Investigator Janilee Clark states that she observed a male exit a Kia SUV on his own and

18   unassisted and without using a wheelchair that was in the back of the SUV.  (Doc. 38-6 ¶¶ 1-7;

19   Doc 39-2 at 2-4.)  Ms. Clark further stated that the male later walked outside of the residence

20   unassisted without using an assistive device for mobility.  (*Id.* ¶ 8; Doc. 39-2 at 4-5.)  Ms. Clark

21   further submits two videos showing: (1) a male in a wheelchair moving from the wheelchair to

22   the driver's seat of an SUV before a female moves the wheelchair to the trunk of the car; and (2)

23   a male briefly walking outside of a residence.  (Doc. 39-3.)

24          Investigator Robert Gonzalez, Jr. states that he observed and took photos and video of

25   Plaintiff on September 21, 2023 doing activities outside of his home including: Plaintiff exiting

26   his residence and bringing in a garbage can without any assistive device; Plaintiff walking out of

27   his residence without the use of a mobility device for assistance; Plaintiff bending down to speak

28   with the older of two small children unassisted; Plaintiff bending down and grabbing a little boy's

hand without appearance of difficulty; Plaintiff standing and speaking with a male visitor without using any assistive device for mobility; Plaintiff walking from his residence to an outside vehicle to speak with a male visitor and a female visitor.  (Doc. 38-7 ¶¶ 6-7; Doc. 39-4; Doc. 39-5.)  Mr. Gonzalez states that he did not observe Plaintiff use a wheelchair, walker, cane, or any other assistive device, or lean on anything to support himself, and instead saw him walk, bend down, and stand in the same manner as someone without a mobility impairment.  (*Id.* ¶¶ 6-8.)

In opposing Defendant's motion and supporting evidence, Plaintiff does not dispute that he walked outside of his home, but disputes whether Defendant's evidence demonstrates Plaintiff does not suffer from a disability, arguing that the ADA does not require Plaintiff to be completely mobility impaired. (Doc. 41 at 1-6, Doc. 41-1, Material Fact Nos. 16-23; Doc. 41-4 ¶¶ 2-4.) Plaintiff further contends in his declaration that he is familiar enough with his home and yard to comfortably walk without risk of falling and can take more effective pain medication when he is not required to drive.  (Doc. 41-4 ¶ 2-4.)  Plaintiff also states that on May 14, 2022, he took non-steroidal pain medication to get through the day's driving and activities and did not usually stray from arm's reach of his vehicle in case he needed support.  (*Id.*  ¶ 7.)  Plaintiff further states that on May 23, 2022, he was able to do some yard work by taking narcotic pain medication, rested his hand on objects including tools, trees, and a trash can; and ultimately went inside to rest before the work was finished.  (*Id.* ¶¶ 9-12.)

At the summary judgment stage, the evidence shows there are disputed issues of fact regarding the actual disability prong.  In Plaintiff's operative complaint and declaration in support of his motion for summary judgment, Plaintiff does not contend that he can never walk, but rather that he cannot walk long distances, that it is difficult for him to walk, and that he sometimes uses a cane or wheelchair to avoid the risk of falling.  (Doc. 32) ("Plaintiff is substantially limited in his ability to walk, and uses a wheelchair or cane for mobility. In addition, Plaintiff's hearing is substantially limited."); (Doc. 40-6 ¶ 4.) ("As a result of my conditions and symptoms, it is difficult for me to walk and I cannot walk long distances. Depending on whether I have a lot of pain or ulcers, sometimes I have to use a wheelchair, and sometimes I am able to get by with a cane. Often, I use my wheelchair to reduce the risk of falling even when I am not in too much

17

pain to physically walk, since even "minor" injuries can cause severe bleeding due to the blood thinners I have to take…")  Evidence showing Plaintiff walk short distances therefore does not contradict Plaintiff's assertions that he is able to walk short distances and sometimes uses a wheelchair or cane to avoid the risk of falling.   Additionally, an individual who can walk short distances or walk with difficulty may still be considered disabled pursuant to the ADA.  *See Bragdon*, 524 U.S. at 641; *Humphrey*, 239 F.3d at 1135.  Defendant's evidence therefore does not demonstrate the absence of a genuine dispute of material fact, and factual disputes remain regarding whether Plaintiff is substantially limited in his ability to walk.  Because an issue of material fact remains regarding whether Plaintiff's walking is substantially limited, the Court declines to grant summary judgment or summary adjudication as to the actual disability prong of Plaintiff's ADA claim.

Defendant also argues that Plaintiff lied under oath about his mobility impairments.  (Doc. 38-2, Doc. 39-9 at 20-21, Doc. 43.)  Defendant contends that the declarations and videos presented by Defendant showing Plaintiff at times walking unassisted.  (*See* Docs. 38-4, 38-6, 38-7, 39, 39-1, 39-2, 39-3, 39-4.)  In contrast, Plaintiff testified in his deposition that he could not walk unassisted.  (Doc. 39-9 at 20-21.)  Plaintiff contends in his declarations that he could not walk long distances and could walk in familiar places that presented less of a falling risk.  (*See* Doc. 40-6; Doc. 41-4.)

This inconsistency does not allow summary judgment or summary adjudication in Defendant's favor on Plaintiff's ADA claim.  The Ninth Circuit has held that though a plaintiff "gave arguably inconsistent deposition testimony on [a] point, such testimony is not conclusive against him at summary judgment."  *Curtis v. ABB Inc*., 622 F. App'x 661, 662 (9th Cir. 2015) (citing *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 730, n. 9 (9th Cir.2012)).  The Ninth Circuit in *Curtis* held that "any discrepancies should be resolved in favor of the nonmoving party at summary judgment, and raise issues of credibility for a factfinder to resolve."  *Id.* (citing *Matsushita*, 475 U.S. at 587 (1986)).  Here, while there is an apparent inconsistency between Plaintiff's deposition testimony that he cannot walk unassisted and his declaration statements that he cannot walk long distances unassisted, this is an issue of credibility that should be resolved by

1    a factfinder.

2           On this record, Plaintiff has made the "minimal showing necessary to survive summary

3    judgment on his claims for substantial impairment of the major life activities." *Head*, 413 F.3d at

4    1062.  The Court therefore declines to grant Defendant summary judgment or summary judgment

5    as to the actual disability prong of Plaintiff's ADA claim.

6           b.  Mootness due to Remediation of Relevant Barriers

7           Defendant also argues that Plaintiff's ADA claim is moot because Defendant has

8    remediated the relevant alleged barriers at issue from Plaintiff's complaint.  (Doc. 38-2 at 11-14.)

9    Plaintiff responds that the evidence of remediation is insufficient and not all barriers have been

10   remediated.  (Doc. 41 at 7-10.)

11          An issue is moot "when the issues presented are no longer 'live' or the parties lack a

12   legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000).

13   "If the parties cannot obtain any effective relief, any opinion about the legality of a challenged

14   action is advisory."  *Id.*  The Ninth Circuit has held that the "question is not whether the precise

15   relief sought at the time the application for an injunction was filed is still available. The question

16   is whether there can be any effective relief."  *Or. Natural Res. Council v. U.S. Bureau of Land*

17   *Mgmt.,* 470 F.3d 818, 820 (9th Cir. 2006).

18          Courts have long recognized a "voluntary cessation exception" to mootness.  *Rosemere*

19   *Neighborhood Ass'n v. U.S. EPA,* 581 F.3d 1169, 1173 (9th Cir. 2009).  Under this doctrine,

20   when a defendant's voluntary cessation of a challenged activity is the basis for mootness, it

21   becomes the defendant's burden to demonstrate that "subsequent events made it absolutely clear

22   that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the*

23   *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000).  "The heavy burden of

24   persuading the court that the challenged conduct cannot reasonably be expected to start up again

25   lies with the party asserting mootness."  *Id.*  This is because "otherwise they would simply be free

26   to 'return to (their) old ways' after the threat of a lawsuit had passed."  *Armster v. U.S. Dist.*

27   *Court for Cent. Dist. of California,* 806 F.2d 1347, 1359 (9th Cir.1986) (quoting *Iron Arrow*

28   *Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983)).

In the context of ADA claims, "[c]ourts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification undo the offending conduct." *Zaldivar v. City of San Diego*, No. 15-cv-67-GPC (RBB), 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016) (collecting cases). When considering non-structural features, on the other hand, courts have found that "voluntary remediation of" these violations do "not moot an issue" because the violations "could easily reoccur." *Id.* (citations omitted). Nonetheless, "[i]n making a determination about whether the facts indicate a danger of future violations ..., [courts] consider[ ] the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, No. CV025088-RGK-MCX, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (citation omitted); *cf. Langer v. G.W. Props., L.P.*, Case No. 15–cv–02443–BAS(BLM), 2016 WL 3419299, at *4 (S.D. Cal. June 21, 2016) ("When determining whether behavior can reasonably be expected to recur, courts consider various issues, such as the (a) motivation behind the conduct, (b) reasons for the change in conduct, (c) volitional nature of the conduct, (d) length of time between the change in conduct and the complaint, and (e) ownership status of the defendant in relation to the property." (citations omitted)).

Here, in arguing for mootness, Defendant addresses Plaintiff's alleged barriers in three categories: (1) permanently remediated exterior barriers from Paragraphs 10(a), 11(c), and 11(d) of Plaintiff's operative complaint;[1] (2) unaltered exterior barriers from Paragraph 11(a) and 11(b) of Plaintiff's operative complaint[2]; and (3) interior barriers from Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative complaint[3]. (Doc. 32 ¶¶ 10-11; Doc. 38-2 at 11-14.)

---

[1] These sections refer to the uneven slopes in the designated accessible parking stalls and the curb ramp outside of the Que Pasa Mexican Cafe. (Docs. 32 ¶¶ 10-11, 38-1 ¶ 25.)

[2] These sections refer to the lack of a properly configured and identified accessible route from the public sidewalk to the restaurant entrance, and lack of a properly configured and identified accessible route connecting the restaurant to the site arrival points from other businesses in the same shopping center. (Docs. 32 ¶ 11, 38-1 ¶ 29.)

[3] These sections refer to the interior of the restaurant and connected patio. (Docs. 32 ¶¶ 10-11, 38-1 ¶ 30.)

1   First, Defendant contends that Plaintiff's ADA claim is moot as to exterior barriers

2   alleged in Paragraphs 10(a), 11(c), and 11(d) of Plaintiff's operative complaint because those

3   barriers have been permanently remediated.  (Doc. 38-2 at 12-13.)  Plaintiff contends that the

4   evidence from Defendant's expert Russell F. Taylor should not be considered as it was not

5   properly disclosed, and Defendant's expert did not claim to have measured the vertical height

6   changes to the parking stall or access aisle.  (Doc. 41 at 7-8.)

7   Defendant's evidence of the remediation is the declaration of expert Russell F. Taylor,

8   supporting photographs of parking spaces, and a December 18, 2023 letter from Mr. Taylor

9   including pictures of the parking area and his assertion that the new installation meets the

10   standards found in California Building Code Chapter 11B.  (Doc. 38-1 at 6, Fact Nos. 26-28; Doc.

11   38-8, Doc. 39-7, Doc. 39-8.)  As the Court has previously found that Mr. Taylor's report was not

12   timely supplemented and therefore Mr. Taylor's evidence would not be considered for the

13   purposes of Defendant's motion, the Court cannot conclude that these alleged ADA violations

14   have been remedied and are not reasonably expected to recur.  Plaintiff's ADA claim is therefore

15   not moot as to the alleged barriers in Paragraphs 10(a), 11(c), and 11(d) in Plaintiff's operative

16   complaint.  *Friends of the Earth*, 528 U.S. at 189.

17   Second, Defendant contends that the unaltered exterior barriers from Paragraph 11(a) and

18   11(b) of Plaintiff's operative complaint are moot as they are not relevant to Plaintiff's disability.

19   (Doc. 38-2 at 13-14.)  Defendant argues that the barriers relate to accessible routes from the

20   public sidewalk to the restaurant and broader shopping center to the restaurant, while Plaintiff

21   testified that he never takes public transportation and did not walk around the shopping center.

22   (Doc. 32 ¶¶ 11(a)-(b); (Doc. 39-9 at 25, 26.)  Plaintiff responds that Plaintiff is not required to

23   have encountered every barrier to be entitled to injunctive relief.  (Doc. 41 at 8-9.)

24   The Ninth Circuit has held "that an ADA plaintiff who establishes standing as to

25   encountered barriers may also sue for injunctive relief as to unencountered barriers related to his

26   disability."  *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 944 (9th Cir. 2011).  Defendant

27   contends that the unencountered barriers described in Paragraphs 11(a) and 11(b) do not relate to

28   Plaintiff's disability, as Plaintiff is able to walk unassisted.  (Doc. 38-2 at 13-14.)  However,

1    Plaintiff has raised a genuine dispute of material fact as to the actual disability prong.

2    Accordingly, Plaintiff remains entitled to sue for injunctive relief as to unencountered barriers

3    related to his disability.  *Chapman*, 631 F.3d at 944 ("we hold that an ADA plaintiff who

4    establishes standing as to encountered barriers may also sue for injunctive relief as to

5    unencountered barriers related to his disability.").  Plaintiff's ADA claims as to Paragraphs 11(a)

6    and 11(b) of his complaint are therefore not moot.

7          Third, Defendant contends that the interior barriers Plaintiff alleges in Paragraphs 10(b)-

8    (f) and 11(e)-(m) of his operative complaint are moot, as Plaintiff has obtained the relief sought

9    through settlement.  (Doc. 38-2 at 14; Doc 38-1 ¶ 30.)  In support, Defendant cites a settlement

10    between Plaintiff Jose Trujillo and dismissed Defendant Baldomero V. Cisneros dba Que Pasa

11    Mexican Cafe that discusses how dismissed Defendant Cisneros will remedy each of the items in

12    Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative complaint.  (Doc. 32 ¶¶ 10(b)-(f),

13    11(e)-(m)) (alleging interior barriers); (Doc. 39-13 at 3-6) (settlement describing facility

14    renovations for each of the alleged interior barriers).

15          Plaintiff does not dispute the settlement or that the items are being remedied, the

16    settlement was reached less than a year after the complaint was filed, and there is no indication

17    that Defendant has a history of violations or further intention to violate the ADA.  (*See* Doc. 39-

18    13 at 3-6; Doc. 41-1 at 12, Material Fact No. 30).  Plaintiff only contends that Defendant Heiskell

19    is the landlord and has a separate obligation to comply with the ADA, which cannot be contracted

20    away.[4]  *Id.*  In support, Plaintiff cites *Kohler v. Bed Bath & Beyond of California, LLC*, in which

21    the Ninth Circuit held that a "landlord could not contract away its responsibility under the ADA."

22    *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015).

23

---

24    [4] Plaintiff's motion for summary judgment and supporting separate statement alleged that some of
these items remained in violation of the ADA, including alleged barriers from Paragraphs 10(b),

25    10(c), and 11(f) of Plaintiff's complaint.  (*See* Doc. 40-1 at 15-17; Doc. 42-1 at 7-12.)  However,
Plaintiff's support for this proposition is based upon his expert's February 8, 2023 visit to the Que

26    Pasa Mexican Cafe, which predates the July 5, 2023 settlement in which dismissed Defendant
Baldomero V. Cisneros dba Que Pasa Mexican Cafe agreed to provide the relief requested.

27    (Docs. 39-13, 40-4.)  This proposition therefore does not create a genuine dispute of material fact

28    as to these alleged barriers.

However, this is not an issue of contracting away responsibility, but an issue of whether Plaintiff can further recover if it has already been agreed that these barriers would be remedied.  Plaintiff does not dispute the fact that the underlying barriers alleged have been or are being remedied per the terms of the settlement.  (Doc. 39-13 at 3-6, Doc. 41-1 at 12.)  Plaintiff's argument therefore does not weigh against Defendant's contention that the alleged barriers have been remediated and that no further relief is possible.

On this record, Defendant successfully demonstrated that the claims contained in Paragraphs 10(b)-(f) and 11(e)-(m) are not reasonably likely to recur.  Accordingly, the voluntary cessation exception does not apply, and Plaintiff's ADA claims related to barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's are moot.  *See Moore v. Saniefar*, No. 1:14-cv-01067-SKO, 2017 WL 1179407, at *6-8 (E.D. Cal. Mar. 29, 2017) (where defendants quickly remedied the alleged violations following the complaint and had no apparent history of ADA violations or further intention to violate the ADA, defendants met their burden of showing claims could not be reasonably expected to recur and therefore plaintiff's ADA claim was dismissed with prejudice as moot).  Plaintiff's ADA claim is therefore dismissed with prejudice solely as to the barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative first amended complaint.  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."); *Johnson v. BBVA Compass Fin. Corp.*, No. 2:14-CV-2416-JAM-KJN, 2016 WL 1170855, at *2 (E.D. Cal. Mar. 25, 2016) ("The Court is therefore persuaded that Plaintiff cannot obtain any meaningful injunctive relief in this action. The ADA cause of action is moot, and the Court must accordingly dismiss it.").

Defendant's Motion for Summary Judgment and/or Summary Adjudication is denied, and the barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative complaint are dismissed with prejudice as moot.

c.  Defendant's Request for Attorneys' Fees

Defendant argues that should it prevail, Defendant is entitled to attorneys' fees and costs as Plaintiff continued the litigation after his suit became frivolous or unreasonable.  (Doc. 38-2 at

14-15.)  However, Defendant did not prevail on its motion for summary judgment and the Court

does not find that Plaintiff continued the litigation after his suit became frivolous or unreasonable.

*See Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421–22,

(1978) (in deciding whether to award prevailing defendant attorneys' fees, "it is important that a

district court resist the understandable temptation to engage in *post hoc* reasoning by concluding

that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or

without foundation.").  Defendant's request for attorneys' fees is therefore denied.

### V.      JURISDICTION REGARDING STATE LAW CLAIMS

Plaintiff also seeks to hold Defendants liable for violations of California's Unruh Act, Cal.

Civ. Code § 51, and California's Health & Safety Code § 19955 *et seq*. (See Doc. 32 ¶¶ 34-46.)

Plaintiff argues that he is entitled to damages under the Unruh Act because a violation of the

ADA constitutes an automatic violation of the Unruh Civil Rights and there are no genuine

disputes of material fact as to the ADA claim.  (Doc. 40-1 at 21-22.)  In its motion for summary

judgment, Defendant argues that Plaintiff's state law claims fail because they rest solely on his

ADA claim, which fails due to Plaintiff not being a mobility-impaired individual.  (Doc. 38-2 at

11.)  As the Court has not found summary judgment warranted on Plaintiff's ADA claim, the

Court declines to grant summary judgment as to Plaintiff's state law claims.  However, the Court

now turns to its jurisdiction over the state law claims.

A court that has original jurisdiction over a civil action "shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution."  28 U.S.C. § 1367(a).  State claims are part of the same case or controversy

as federal claims "when they derive from a common nucleus of operative fact and are such that a

plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Kuba v. 1-A Agric.*

*Assoc.*, 387 F.3d 850, 855-56 (9th Cir. 2004) (internal quotation marks, citation omitted).

Notably, the Ninth Circuit concluded ADA and Unruh Act claims that derive from a common

nucleus of facts "form part of the 'same case or controversy' for purposes of § 1367(a)."  *Arroyo*

*v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right," and district courts "can decline to exercise jurisdiction over pendent claims for a number of valid reasons." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (internal quotation marks, citations omitted).  This discretion is codified under Section 1367(c), which provides a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  This provision is "a 'codification' of the principles of 'economy, convenience, fairness, and comity' that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction." *Whitaker v. Mac*, 411 F.Supp.3d 1108, 1113 (C.D. Cal. 2019) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (identifying the following as relevant factors: judicial economy, convenience, fairness, and comity, which together are the "*Gibbs* values").

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under the first three provisions." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).  However, the Court is required to identify why circumstances may be "exceptional" when declining jurisdiction under Section 1367(c)(4).  *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021).  "A district court's decision to decline supplemental jurisdiction over a state-law claim is reviewed for abuse of discretion." *Vo v. Choi*, 49 F.4th 1167, 1171-72 (9th Cir. 2022).

A court's inquiry as to whether deny Section 1367(c)(4) involves a two-part inquiry. *Arroyo*, 19 F.4th at 1210.  First, the Court must identify "why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id*. (citation omitted); *see also San Pedro Hotel*, 159 F.3d at 478-79 (court must explain its reasons for declining jurisdictions under Section 1367(c)(4), but not Sections 1367(c)(1)-(3)).  Second, to evaluate whether "there are 'compelling

reasons for declining jurisdiction' in a given case, the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine' articulated in *Gibbs*." *Arroyo*, 19 F.4th at 1210 (citing *Int'l Coll. of Surgeons*, 522 U.S. at 172-73).  The Ninth Circuit indicated these "inquiries are not particularly burdensome."  *Id*. (citation omitted.)

Significantly, "California adopted heightened pleading requirements for Unruh Act accessibility claims in an attempt to deter baseless claims and vexatious litigation" in 2012. *Machowski v. Auburndale Props.*, 574 F.Supp.3d 776, 779 (C.D. Cal. 2021); *see also Vo*, 49 F.4th at 1170 (noting the state "imposed heightened pleading requirements" following the abuse of remedies under the Unruh Act).  The state adopted further restrictions in 2015, after the heightened pleading requirements alone "did not substantially reduce vexatious filings."  *Id*. (citing Cal. Civ. Proc. Code § 425.50).  The state targeted "high-frequency litigants," which the state defined as plaintiffs who "filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation."  Cal. Code Civ. Proc. § 425.55(b)(1).

Under the law, high-frequency litigants—such as Plaintiff now appears to be[5] — are now

---

[5] Plaintiff filed approximately 14 complaints in the Eastern District alleging a construction-related accessibility violation in the 12 months preceding the August 5, 2022 filing of this claim.  *See Trujillo v. Singh*, Case No. 1:21-cv-01420-DAD-HBK (filed Sept. 24, 2021); *Trujillo v. Taco Riendo Inc.*, Case No. 1:21-cv-01446-JLT-SAB (filed Sept. 28, 2021); *Trujillo v. Vejar's Inc.*, Case No. 1:21-cv-01467-KES-SKO (filed Sept. 30, 2021); *Trujillo v. Villegas Velez*, Case No. 1:21-cv-01469-SAB (filed Sept. 30, 2021); *Trujillo v. 4B Market Incorporated*, Case No. 1:21-cv-01559-JLT-HBK (filed Oct. 22, 2021); *Trujillo v. Malwa Food Mart Inc.*, Case No. 1:21-cv-01580-AWI-BAM (filed Oct. 25, 2021); *Trujillo v. Barboza*, Case No. 1:21-cv-01691-KES-BAM (filed Nov. 24, 2021); *Trujillo v. Solar Laundromat Corporation et al*, Case No. 1:22-cv-00379-JLT-SKO (filed March 30, 2022); *Trujillo v. Hernandez et al*, Case No. 1:22-cv-00643-ADA-BAM (filed May 27, 2022); *Trujillo v. Amador et al*, Case No. 1:22-cv-00644-ADA-SKO (filed May 27, 2022); *Trujillo v. Gogna et al*, 1:22-cv-00707-JLT-SAB (filed June 10, 2022); *Trujillo v. Alkorin et al*, Case No. 1:22-cv-00743-EPG (filed June 17, 2022); *Trujillo v. Tulare Village, LLC et al*, Case No. 1:22-cv-00830-SKO (filed July 6, 2022); *Trujillo v. Chaudhary et al*, Case No. 1:22-cv-00969-ADA-SKO (filed Aug. 3, 2022).

required to comply with the following requirements:

> (1) the complaint must allege whether it is filed by or on behalf of a
> high-frequency litigator;
> (2) the number of complaints alleging a construction related
> accessibility claim that were filed by the high frequency
> litigator in the past twelve months;
> (3) the reason the high frequency litigator was in the region of the
> defendant's business; and
> (4) the specific reason that the high frequency litigator desired
> access to the defendant's business.

*Malchowski*, 574 F.Supp.3d at 779 (citation omitted, modifications adopted); *see also* Cal. Civ.

Proc. Code § 425.50(a)(4)(A)).  The high-frequency litigants must also pay an additional $1,000

filing fee.  Cal. Gov't. Code § 70616.5(a), (b).  Importantly, these additional requirements appear

to apply only in the state court, and "plaintiffs can circumvent the restrictions on high-frequency

litigants by filing their complaints in federal court, asserting federal question jurisdiction over the

ADA claim and supplemental jurisdiction over the state-law claims."  *Shalyer v. 1310 PCH,*

*LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) (citing *Arroyo*, 19 F.4th at 1207); *see also Vo*, 49 F.4th

at 1170 ("we assume... these new requirements apply only in California state court").

The Ninth Circuit—and district courts within the circuit—have recognized an increase in

disability access claims brought in federal court by the "high-frequency litigants" who would be

subject to the additional requirements before the state.  *See, e.g., Arroyo*, 19 F.4th at 1211;

*Shalyer*, 51 F.4th at 1017-18 (observing that in the Central District alone, "the number of ADA

cases has ballooned from 3 percent of its civil docket to roughly 20 percent in recent years");

*Gilbert v. Bonfare Markets, Inc.*, No. 1:22-cv-00605-AWI-BAM, 2023 WL 1803398, at *4 (E.D.

Cal. Feb. 7, 2023) (noting "the burden the ever-increasing number of [accessibility] cases poses to

the federal courts"), report and recommendation adopted, No. 1:22-cv-00605-AWI-BAM, 2023

WL 2392850 (E.D. Cal. Mar. 7, 2023); *Arroyo v. Quach, Inc.*, No. 21-cv-08778-JST, 2022 U.S.

Dist. LEXIS 73567, at *3 (N.D. Cal. Apr. 12, 2022) ("California federal courts have experienced

a large influx of cases involving a federal claim under the ADA for failure to ensure that

businesses are accessible to customers with disabilities, alongside a state-law claim under the

27

Unruh Act").  The Ninth Circuit attributed this increase to Unruh Act plaintiffs who sought to avoid the California requirements, "by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements."  *Arroyo*, 19 F.4th at 1211.  As a result, the Ninth Circuit opined "the procedural strictures that California put in place have been rendered largely toothless..."  *Id.*

Having acknowledged the apparent avoidance by litigants who pursue their state claims in federal courts, the Ninth Circuit had "little difficulty" reaching the conclusion that "the legal landscape" concerning Unruh Act cases constitutes an exceptional circumstance within the meaning of Section 1367(c)(4).  *Vo*, 49 F.4th at 1169 (citing *Arroyo*, 19 F.4th at 1214).  Importantly, however, denying supplemental jurisdiction at a late stage in the litigation does not effectuate the values of judicial economy, conveniences, fairness, and comity.  *Arroyo*, 19 F.4th at 1215-16.  On the other hand, denying supplemental jurisdiction over an Unruh Act claim "well before ... rul[ing] on the merits of the ADA claim" is consistent with the *Gibbs* values, particularly comity. *Vo*, 49 F.4th at 1172-73.

Given this background, the Court finds that there are exceptional circumstances in this matter.  The legal landscape addressed by the Ninth Circuit in *Arroyo*, *Vo*, and *Shalyer* demonstrate that exceptional circumstances exist with the "high-frequency" litigants avoiding the additional pleading requirements—and filing fee—mandated under state law by proceeding before the federal court with claims arising under the Unruh Act.  The resulting increase in disability access cases has burdened the courts.  Indeed, the Eastern District of California remains under a state of judicial emergency, and an increase in disability access cases strains its already limited judicial resources.  Thus, the Court finds there are "exceptional circumstances" for declining supplemental jurisdiction.

Moreover, the Court finds the *Gibbs* values of judicial economy and convenience weigh in favor of declining supplemental jurisdiction over the state law claims.  Although the Court addressed the merits of the ADA claim to the limited extent necessary to address the motions for summary judgment, it has not been required to expend a significant amount of time and resources on the merits of the action given the parties' failure to present evidence on the threshold element

1   for Plaintiff's ADA claim.  Moreover, any inefficiencies created by the Court's decision to decline

2   supplemental jurisdiction "are problems ultimately that resulted from [the] plaintiff's decision to

3   file this [a]ction in federal, rather than state court."  *See Whitaker v. Aftalion,* No. CV 19-9445-

4   RSWL-AGRX, 2020 WL 5845724, at *4 (C.D. Cal. July 23, 2020).

5            Fairness also weighs in favor of declining supplemental jurisdiction over the claims

6   arising under Unruh Act and California's Health and Safety Code.  Plaintiff will not be prevented

7   from receiving injunctive relief to remove the encountered accessibility barriers —the only relief

8   available—under his ADA claim, if he is able to establish his claim at trial.

9            Finally, comity weighs in favor of declining jurisdiction, particularly in light of the state's

10  efforts to thwart abuse of the legal system through the filing of unverified disability access

11  claims.  *See, e.g., Arroyo*, 19 F.4th at 1215-1216 (acknowledging important comity interests, and

12  indicating that "[i]f the district court had declined supplemental jurisdiction over Arroyo's Unruh

13  Act claim at the outset of the litigation, it might then still have been possible to further

14  California's interest in cabining Unruh Act damages claims"); *Marquez v. KBSM Hospitality

15  Corp*., 492 F.Supp.3d 1058, 1064 (C.D. Cal. 2020) ("To allow federal courts to become an escape

16  hatch that allows high-frequency litigants to pursue such claims without satisfying California's

17  requirements is an affront to the comity between federal and state courts"); *Garcia v. Maciel*, No.

18  21-CV-03743-JCS, 2022 WL 395316, at *5 (N.D. Cal. Feb. 9, 2022) (where the case had "not

19  progressed beyond threshold questions," comity weighed in favor of declining supplemental

20  jurisdiction).  To the extent addressing supplemental jurisdiction at this juncture is inefficient, the

21  Court finds the inefficiency is outweighed by the interest of comity.  *See Schutza v. Alessio

22  Leasing, Inc*., No. 18CV2154-LAB (AGS), 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019)

23  ("By being 'inefficient' and declining to exercise supplemental jurisdiction ..., this Court is

24  simply recognizing that California has a strong interest in interpreting and enforcing its own rules

25  without federal courts serving as a convenient end-around for creative litigants. If that results in

26  occasional inefficiency, it's a worthwhile tradeoff.").

27           Because there are "exceptional circumstances" and "compelling reasons" as described

28  above, the Court now exercises its discretion to decline supplemental jurisdiction over Plaintiff's

state law claims pursuant to Section 1367(c)(4).  Accordingly, Plaintiff's claims for violations of the Unruh Act and the California Health & Safety Code are DISMISSED without prejudice.

## VI.    CONCLUSION AND ORDER

Plaintiff failed to carry his burden to show he is entitled to summary judgment or summary adjudication.  Defendant demonstrated that the ADA claim barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative complaint are now moot, but otherwise failed to carry its burden to show it is entitled to summary judgment or summary adjudication. Additionally, the Court exercises its discretion to decline supplemental jurisdiction over the claims arising under state law.

Accordingly:

1. Plaintiff's motion for summary judgment or partial summary adjudication (Doc. 40) is DENIED;

2. Defendant's motion for summary judgment and/or summary adjudication (Doc. 38) is DENIED;

3. Plaintiff's ADA claim, solely as to the barriers alleged in Paragraphs 10(b)-(f) and 11(e)-(m) of Plaintiff's operative first amended complaint, is DISMISSED with prejudice as moot;

4. The Court DECLINES to exercise supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(c)(4);

5. Plaintiff's claims for violations of the Unruh Act and the California Health & Safety Code are DISMISSED without prejudice; and

///
///
///
///
///
///
///

6.  A Pretrial Conference in this matter remains set for **July 29, 2024 at 10:00 AM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.**  The parties are directed to comply with Local Rules 280 and 281 regarding Pretrial Conferences and Pretrial Statements.

IT IS SO ORDERED.

Dated:   **June 14, 2024**                        /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE